# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERICA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-20-1248-R |
| | ) |
| THE STATE OF OKLAHOMA, ex rel. | ) |
| OKLAHOMA DEPARTMENT OF | ) |
| VETERANS AFFAIRS; ROBERT | ) |
| ARRINGTON, in his individual capacity; | ) |
| RHONDA WADLEY, in her individual | ) |
| capacity; and KELLY FREDERICKS, | ) |
| in her individual capacity, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is the Motion to Dismiss (Doc. No. 8) filed by Defendants Robert Arrington, Rhonda Wadley, and Kelly Fredericks, in their individual capacities. Plaintiff responded in opposition to the motion. (Doc. No. 10). Upon consideration of the parties' submissions, the Court finds as follows.[1]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[1] Plaintiff's response to the Motion to Dismiss contains numerous footnotes laying out new facts, that is, facts not contained in the Amended Complaint, followed by, "[i]f the Court deems necessary, Plaintiff would ask for leave to amend to include such facts in her Complaint." If Plaintiff wants the Court to consider the factual material not contained in the Amended Complaint, she should seek leave to amend in accordance with the relevant procedural rules. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (generally on Motion to Dismiss Court's consideration is limited to the allegations in the complaint). Plaintiff acknowledges in footnote 1 of her response brief that the additional facts are not appropriate for the Court to consider in assessing the instant motion, but the new facts are of limited utility without an accompanying motion to amend.

544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" *id.* at 570, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. For the purpose of making the determination, the Court accepts all the well-pleaded allegations of the complaint as true and construes the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007). However, the Court need not accept as true conclusory allegations. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

Defendants' motion addresses Plaintiff's Amended Complaint, which alleges the following with regard to her employment and subsequent termination by the Oklahoma Department of Veterans Affairs. Plaintiff was employed by Defendant VA from July 7, 2014 until September 5, 2019. She was hired as a patient care assistant and promoted to a patient care II position on August 9, 2015. Plaintiff contends she was a satisfactory or better employee who received both a promotion and merit pay increases, as well as a perfect attendance certificate. Plaintiff contends that despite performing her job adequately, she was terminated on the heels of mediating an EEOC complaint. She further alleges that her termination was the result of her need for leave for treatment following a May 2019 car accident.

Specifically, in May 2018, Plaintiff filed an internal grievance asserting that her supervisor, Kelly Fredericks, discriminated against her on the basis of her national origin.

The grievance was the result of an incident whereby two employees were asked to "float," that is, work a different hallway than their normal assignment. Each of those two employees refused without consequence. However, when Plaintiff was instructed to "float" when it was not her turn, she refused. Kelly Fredericks got angry, verbally reprimanded Plaintiff and had security escort her from the premises.

Plaintiff filed an EEOC charge in September 2018. During the pendency of the charge Plaintiff was involved in an automobile accident, resulting in injury to her shoulder, back, and neck, which exacerbated Plaintiff's arthritis and tendonitis. These injuries required Plaintiff, who was still employed at the VA, to take intermittent leave to undergo medical treatment. She provided medical notes as needed and continued to perform her job adequately.

On June 4, 2019, Plaintiff and Defendant mediated her charge of national origin discrimination before the EEOC. The parties reached a resolution and Defendant agreed that Plaintiff would not be subjected to retaliation or additional discrimination. Plaintiff contends that two weeks after the mediation concluded she was written up, unjustly, being falsely accused of patient abuse. In part, Plaintiff was written up by Fredericks, the supervisor who was the subject of the internal grievance for alleged violation of Defendant's leave policies, which Plaintiff was following with regard to the medical appointments necessary to treat her injuries. Plaintiff submitted a doctor's note ordering leave between June 17, 2019 and June 24, 2019. When she returned from leave, she was written up for leave abuse.

Plaintiff was also counseled that same day, June 25, 2019, for allegedly startling a co-worker by tossing a plastic cup into a sink. She alleged similarly situated co-workers who engaged in similar or more egregious conduct were not disciplined. She further alleged that on July 12, 2019, she was suspended, with pay, without reason. She was not permitted to return and was removed from the schedule.

On August 21, 2019, Plaintiff received a pre-termination hearing notice signed by Defendant Arrington, which asserted that Plaintiff violated leave policies. She was also accused in the notice of roughhousing a patient which she alleges was false, because it allegedly occurred on July 18, 2019 when she was on suspension. Plaintiff was informed of her termination on September 13, 2019, effective September 5, 2019, via a notice that alleged that she had abused or neglected two residents on July 18, 2019.[2] The notice of termination was signed by Defendant Arrington. Plaintiff contends that Defendants Arrington, Wadley and Fredericks were all involved in the decision to terminate her employment. The individual Defendants seek dismissal of Plaintiff's claims against them as set forth herein.

With regard to Plaintiff's claims in Counts VII and VIII, interference with a contract and interference with a prospective economic advantage, respectively, Defendants argue that because they were each agents of the VA, and an agent of an employer cannot tortiously interfere with either a contract or the employment relationship, the claims must be dismissed. *See Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla.

---

[2] Defendant Rhonda Wadley, the assistant administrator for Defendant VA, filed an incident report on July 24, 2019, with the Oklahoma State Department of Health. She alleged resident abuse/mistreatment by Plaintiff. She indicated therein that the alleged incidents, which Plaintiff denies, were the basis for terminating Plaintiff.

1996)(employee or agent of a party to a contract cannot generally be held liable under a theory of tortious interference).[3] Plaintiff argues that the individual Defendants can be held liable because she alleges their actions were malicious, without justification, excuse or privilege. *See* Amended Complaint, ¶ 72.

To state a claim for tortious or malicious interference with a business relationship, plaintiff must allege sufficient facts for the Court to infer "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damages proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009). A claim for tortious interference with prospective economic advantage is similar and requires a plaintiff to allege "(1) the existence of a valid business or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) an intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Cohlmia v. St. John Medical Center*, 693 F.3d 1269, 1286-87 (10th Cir. 2012) (applying Oklahoma law). Generally, such interference must come from a third party, which would exclude agents of a party to the contract. *See Wilspec Technologies, Inc. v. DunAn Holding Group, Co.*, 204

---

[3] Defendants alternatively argue, without elaboration, that "Plaintiff was merit protected and therefore, any and all rights she had under state law must be exhausted by an appeal to the Oklahoma Merit Protection Commission." (Doc. No. 8, pp. 13-14). Plaintiff does not plead whether she is at-will or whether she was only subject to termination for cause. The absence of such facts combined with the limited scope of Defendant's argument regarding the Merit Protection Commission makes it impossible for the Court to rely on this argument as a basis for dismissal.

P.3d 69, 74 (Okla. 2009); *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla. 1996).[4]

An agent may, however, be held liable for tortious interference, if acting against the interests of the principal and in furtherance of his or her own interests.

> [T]o show that the agent was acting in his own interests requires more than a showing of bad faith; plaintiff must show that the agent was acting contrary to the business interest of his employer and in furtherance of the agent's own, personal interests. See, Graham v. Cargill, Inc., 2011 WL 5429316, **3-4 (W.D. Okla. Nov. 9, 2011) (summary judgment stage); Taverna v. First Wave, Inc., 2010 WL 4930583, *14 (N.D. Okla. Nov. 30, 2010) (summary judgment stage); Sanders v. State of Oklahoma ex rel. Oklahoma Workers' Compensation Comm., 2016 WL 1737135, *5 (W.D. Okla. May 2, 2016) (motions to dismiss stage).

*Grillot v. Oklahoma ex rel. University of Oklahoma Board of Regents*, No. CIV-19-0241-F, 2019 WL 3558183 (W.D. Okla. Aug. 5, 2019).

Although Plaintiff alleges that the individual employee Defendants acted maliciously, the Amended Complaint presents no factual allegations that would support the conclusion that Defendant Arrington or Wadley was acting in furtherance of his or her own interests. Accordingly, any such claims are hereby dismissed. With regard to Defendant Fredericks, however, the Court finds the allegations sufficient to state a claim. Plaintiff alleges that she complained about national origin discrimination by Defendant Fredericks, which included the filing of an EEOC charge, and that after conciliation of the

---

[4] To the extent Plaintiff's Amended Complaint attempted to allege that Defendants discriminated against her on the basis of race, thereby depriving her of her contractual rights and her prospective economic advantage, such claims would be barred by Okla. Stat. tit. 25 § 1101, and its mandate that the Oklahoma Anti-Discrimination Act, "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of race. . . ." *See Patterson v. Rural Water District 2*, 438 F.Supp.3d 1258, 1278 (W.D. Okla. 2020).

EEOC charge Defendant Fredericks began issuing unwarranted disciplinary actions against Plaintiff. The Court finds these allegations sufficient to state a tortious interference claim. The Motion to Dismiss is GRANTED as to Counts VII and VIII of the Amended Complaint and Defendants Arrington and Wadley, and denied as to Defendant Fredericks.

Plaintiff also seeks relief under 42 U.S.C. § 1983, alleging that Defendants violated her right to free speech under the First Amendment and her substantive due process rights under the Fourteenth Amendment. Specifically, Plaintiff contends that Defendants acted in response to her 2018 complaints of discrimination—both her May 2, 2018 allegation of discrimination against Defendant Fredericks and her November 19, 2018 EEOC charge asserting the same claim of race and national origin discrimination. Defendants seek qualified immunity on Plaintiff's § 1983 constitutional claims.

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2002). In response to the defense of qualified immunity, Plaintiff must show: (1) that the particular defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct. *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016). For a violation to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922

7

(10th Cir. 2015) (quoting *Morris v. Noe,* 672 F.3d 1185, 1196 (10th Cir. 2012)). A case need not be directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335 (1986)).

The Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "In determining whether the plaintiff meets [the requisite] burden, [the Court] ordinarily accept[s] the plaintiff's version of the facts—that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (internal quotation marks omitted).

The Court's analysis of Plaintiff's First Amendment claim proceeds under the Garcetti/Pickering balancing test because she is a public employee. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). This analysis requires that the Court balance Plaintiff's free speech interests as a private citizen against the efficiency interests of the state, as an employer, using the following five elements:

1. The protected speech was not made pursuant to an employee's official duties.
2. The protected speech addressed a matter of public concern.
3. The government's interests as an employer did not outweigh the employee's free-speech interests.
4. The protected speech was a motivating factor in the adverse employment action.

5. The defendant would not have made the same employment decision in the absence of the protected speech.

*Lincoln v. Maketa,* 880 F.3d 533, 583 (10th Cir. 2018).

Here Defendant argues that Plaintiff's internal complaint of discrimination and the subsequent EEOC charge did not address matters of public concern. Citing authority from outside the Tenth Circuit Plaintiff contends that allegations of discrimination in employment are always matters of public concern. The Court concurs with Defendant's argument under the facts of this case.

Whether a matter is one of public concern is a legal issue for the court to address. *Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cnty. Oklahoma*, 896 F.3d 1176, 1181 (10th Cir. 2018). "Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012) (internal quotation marks omitted).

> In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. *See Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. *See id.,* 461 U.S. at 148, 103 S.Ct. at 1690–91. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern *See id*. at 147–49, 103 S.Ct. at 1690–91; *Woodward*, 977 F.2d at 1403. In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91. "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]." *Workman*, 32 F.3d at 483.

*David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). Plaintiff's First Amendment claim is based on the allegations of national origin discrimination she raised in 2018, that supervisor Kelly Fredericks treated her differently on this basis.[5] The allegations in the Amended Complaint do not support the inference that Plaintiff was complaining about alleged national origin discrimination on behalf of anyone but herself. *See id*, 101 F.3d at 1356-57 (holding that allegations of sexual harassment focusing on the conditions of the plaintiff's own employment were not a matter of public concern). As the Tenth Circuit recently noted in *Joritz v. Gray-Little*, 822 F. App'x. 731, 740 (10th Cir. 2020), "[Plaintiff] did not levy a broad challenge to 'pervasive and systematic misconduct by a public agency or public officials,' nor did she attempt 'to correct allegedly unlawful practices or bring them to public attention.'" (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)(internal quotation marks omitted)). "We have no doubt that discrimination and harassment in the workplace are issues of significant social interest, but that does not automatically translate an employee's speech on those issues into matters of public concern for First Amendment purposes." *Id.* at 741. Accordingly, the individual Defendants are entitled to dismissal of Plaintiff's 42 U.S.C. § 1983 First Amendment claim—Count III of the Amended Complaint.

---

[5] Throughout the Amended Complaint Plaintiff incorporates by reference all prior paragraphs and allegations and then with regard to each particular claim lobs general allegations. "Plaintiff's comments as stated herein, including Plaintiff's complaints of discrimination, constituted comments on matters of public concern." (Amended Complaint, ¶ 52). The only complaints of discrimination set forth in the Amended Complaint are her allegations of national origin discrimination, raised in 2018 in response to Ms. Frederick's decision to remove her from the jobsite when she refused to "float" and her subsequent EEOC charge addressing that issue.

10

Defendants also seek dismissal of Plaintiff's § 1983 substantive due process claim. The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1. "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (2008)(citing *County of Sacramento v. Lewis*, 528 F.3d 833, 845-46 (1998)).

> The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience. *See Chavez*, 538 U.S. at 787, 123 S.Ct. 1994 (Stevens, J, concurring in part and dissenting in part)("The Due Process Clause of the Fourteenth Amendment protects individuals against state action that either 'shocks the conscience,' or interferes with [fundamental] rights 'implicit in the concept of ordered liberty.'" (citations omitted)).

*Id.* In response to the Motion to Dismiss, which argues that Plaintiff does not allege facts to support the "shocks the conscience" standard, Plaintiff indicates that her substantive due process claim is premised on the other strand, fundamental rights. (Doc. No. 10, p. 28). Plaintiff argues, "[h]aving established a protected liberty interest, Plaintiff need not meet the shocks the conscience standard (though the facts here would support it)." (Doc. No. 10, p. 29). She then argues that the "shocks the conscience" standard applies in other contexts not relevant here.

In *Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018), the Tenth Circuit provided substantial guidance to clarify its substantive due process jurisprudence.

> The Supreme Court has identified substantive due process cases that turn on whether the government has infringed a right that is "fundamental."

11

> *Washington v. Glucksberg*, 521 U.S. 702, 721-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (examining an asserted right to assistance in committing suicide). Other times, the legal test simply asks if the government action deprives a person of life, liberty, or property in a manner that is so arbitrary it shocks the judicial conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (examining a high-speed police chase). There is uncertainty about when we apply these various tests, *see Moya v. Garcia*, 887 F.3d 1161, 1174 (10th Cir. 2018) (McHugh, J., concurring in part and dissenting in part), but as explained in recent cases, our circuit has coalesced around a solution: we apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 (10th Cir. 2015); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009); *Dawson*, at 635-37 (Tymkovich, J., concurring).

*Id.* at 1153. Accordingly, despite Plaintiff's argument to the contrary, she must allege facts to support a conclusion that the individual's actions, which were clearly executive in nature, are conscious shocking. Additionally, "'[i]n order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Earles v. Cleveland* 825 F. App'x. 544, 552 (10th Cir. 2020)(quoting *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978)).

Plaintiff claims a liberty interest in her reputation.

To state a claim for deprivation of one's liberty interest in good name and reputation, the plaintiff must plausibly allege one of the following:

(1) A state actor made a statement that impugned the plaintiff's good name, reputation, honor, or integrity;
(2) The statement was false;
(3) The statement was made during the course of termination and forecloses other employment opportunities; and
(4) The statement was "published" (disclosed to the public).

*Id.* at 550 (citing *McDonald v. Wise*, 759 F.3d 1202, 1212 (10th Cir. 2014)). The Court finds that Plaintiff has not alleged sufficient facts to support the deprivation of a liberty interest by the Defendants.

Paragraph 29 of the Amended Complaint alleges that "on or about July 12, 2019, Plaintiff was forced onto a paid suspension without reason. She was not allowed to return. Rather, Plaintiff was removed from the schedule with her 'suspension' being published thereon." Plaintiff was suspended, according to her allegations, but she does not allege that the schedule contained any false information, that is, she does not allege that the schedule revealed why she had been suspended nor does she allege which Defendant allegedly made the schedule and posted it. The Amended Complaint alleges that Defendant Arrington issued her a notice of pre-termination hearing that contained false accusations that Plaintiff had abused or mishandled one or more patients at the VA. Plaintiff does not allege, however, that Defendant Arrington published the allegedly false statements. There is no indication that the notice was publicly available, and the same holds true for the notice of termination that Defendant Arrington allegedly issued. Plaintiff asserts in paragraph 34 of the Amended Complaint that Assistant Administrator Rhonda Wadley filed an incident report against Plaintiff with the Oklahoma State Department of Health. She does not allege, however, that the report was released to the public. Similarly, the Defendant's response to the EEOC referenced in paragraph 36 of the Amended Complaint was not a publication because EEOC files are not public. Additionally, because Plaintiff failed to argue that the actions of any individual defendant were conscious shocking, beyond a single statement set forth above, the Court finds that Plaintiff has failed to overcome Defendants' assertion

of qualified immunity. Therefore, Defendants are entitled to dismissal of Plaintiff's § 1983 substantive due process claim.

In Count V of the Amended Complaint Plaintiff seeks to hold the individual Defendants liable under the Family Medical Leave Act ("FMLA"). Plaintiff asserts that each of the Defendants is an "employer" for purposes of the Act and that Defendants violated her rights under the Act by subjecting her to discipline and termination after she took FMLA leave for treatment of her serious medical conditions. Defendants seeks dismissal arguing they are not "employers" for purposes of the FMLA and further, that they are entitled to qualified immunity.

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period...[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Subject to certain exemptions, an employee is entitled to restoration to her original position or an equivalent upon returning from leave and shall not lose any benefits accrued prior to her leave. Id. § 2614(a)(1)-(2). The Tenth Circuit "has recognized two theories of recovery under 28 U.S.C. § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (footnote omitted).

To establish an FMLA retaliation claim, Plaintiff must allege that she (1) engaged in activity protected by the FMLA; (2) her employer took a materially adverse action; and (3) a causal connection between the protected activity and materially adverse action. *Id.* at

1171. Defendants do not challenge that Plaintiff has alleged that she engaged in protected activity but contend they cannot be held individually liable as employers.[6]

> The Tenth Circuit remains silent on the issue of whether a public employee can be held individually liable for monetary damages under the FMLA. The Circuit Courts remain split on the issue. *Compare Modica v. Taylor*, 465 F.3d 174, 184–86 (5th Cir. 2006) (individual public employees fall within (ii)(I) and may be liable), and *Darby v. Bratch*, 287 F.3d 673, 680–81 (8th Cir. 2002), with *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir.2003) (individual public employees do not fall within (ii)(I) and may not be liable), and *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999).

*Dixon v. Oklahoma, ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, No. CIV-19-391-KEW, 2020 WL 7089427, at *2 (E.D. Okla. Dec. 3, 2020). The FMLA defines an "employer" to include "(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4).

> The vast majority of the cases considering the positions on this issue have sided with the Eighth and Fifth Circuit Courts and concluded that individual liability may be conferred upon a "person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *See Miles v. Unified School Dist. No. 500*, 347 F.Supp. 3d 626, 630 (D. Kans. 2018); *Richards v. Schoen*, 2018 WL 447731, at 5 (D. Kans. Jan. 17, 2018); *Cordova v. New Mexico*, 283 F.Supp. 3d 11028, 1037 (D.N.M. 2017); *Hibben v. Oklahoma ex rel. Dep't of Veterans Affairs*, 2017 WL 1239146, at *6 (N.D. Okla. Mar. 31, 2017); *McFadden v. Tulsa Cty. Bd. of Cty. Comm'rs*, 2016 WL 6902182, at *2 (N.D. Okla. Nov. 23, 2016); *Washington–Walker v. Univ. of Okla. Bd. of Regents*, 2016 WL 1453053, at *3 (W.D. Okla. Apr. 13, 2016); *Kiefner v. Sullivan*, 2014 WL 2197812, at *9–10 (N.D. Okla. May 27, 2014); *Owens v. City of Barnsdall*, 2014 WL 2197798, at *6 (N.D. Okla. May 27, 2014); *Jeffers v. Redlands Comm. College Bd. of Regents*, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012); *Saavedra v. Lowe's Home Centers, Inc.*, 748 F.Supp.2d 1273, 1291 (D.N.M. 2010) *but see Arbogast v. Kansas*, No. 13-CV-4007-JAR/KMH, 2014 WL 1304939, at *5–6 (D. Kan. Mar. 31, 2014); *Lacher v. Bd. of Co. Comm'rs for Okla. Co. ex rel. Okla. Co. Clerk's Office*, 2013 WL 268983, at 5 (W.D. Okla.

---

[6] Defendants alternatively contend they are entitled to qualified immunity because it is unclear whether public supervisory employees can be held liable as employers under the FMLA.

15

> Jan. 24, 2013). This Court specifically declines to follow the reasoning in *Lacher*, relied upon by [defendant] in the briefing, as the basis for the opinion ignores the plain and express language of the statute which extends liability to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."

*Id.*, at *3. The Court finds that with regard to Defendants Arrington and Fredericks Plaintiff has sufficiently alleged facts to state a claim for individual employer liability under the FMLA under a theory of retaliation. Defendant Fredericks allegedly disciplined Plaintiff immediately upon her return from FMLA leave in June 2018. Defendant Arrington, Administrator of the Norman Veterans Center, drafted both the pre-termination and termination notices, both of which referenced alleged attendance issues, referencing the week of leave Plaintiff allegedly took pursuant to the FMLA. With regard to Defendant Wadley, however, the Court finds no allegations that she participated in any of the alleged discipline over Plaintiff's leave. Rather, she is alleged to have falsely reported abuse/neglect of patients to the Oklahoma Department of Health. Therefore, Court finds she is entitled to dismissal of Plaintiff's FMLA claim.

Turning to the assertion of qualified immunity by Defendants Arrington and Fredericks, the Court rejects their theory that the uncertainty of individual liability under the FMLA operates as a defense. In *Gray v. Baker,* 399 F.3d 1241 (10th Cir. 2005), the court considered whether it had jurisdiction under the collateral order doctrine.

> [A]lthough the collateral order doctrine does apply to district court officials denying public officials qualified immunity, e.g. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), we are not persuaded the defense asserted by [defendants] to [plaintiff's] FMLA claim can legitimately be characterized as a claim of qualified or "good faith" immunity. Qualified immunity is a judicially-created defense that shields public officials from civil liability based on having acted in good faith in the

16

> exercise of their duties. *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982). Here, in contrast, the defense asserted by [defendants] does not hinge on their having acted in good faith in their dealings with [plaintiff]. In other words, [defendants] are not claiming, and indeed cannot claim given the clear requirements of the FMLA, they were unaware that a particular course of conduct would be violative of the FMLA. Instead, [defendants] are claiming they cannot be sued at all given their legal interpretation of the statutory term "employer," as defined by the FMLA. At bottom, the question of whether the defendants are subject to individual liability under the FMLA is one of statutory construction that had no bearing on the decisions defendants made with respect to [plaintiff].

*Id*. at 1245. The Court interprets this holding as rejecting the basis for qualified immunity asserted by Defendants in their motion to dismiss. Furthermore, it was clearly established that the denial of qualifying leave and the termination of employment in relation to an FMLA leave request is a violation of the law. *See Twigg v. Hawker Beechcraft Corp*., 659 F.3d 987, 1006 (10th Cir. 2011). Therefore, the Court hereby denies the motion to dismiss as to Defendants Arrington and Fredericks as to Plaintiff's FMLA claim.

As her final two claims Plaintiff asserts race discrimination by the Caucasian individual Defendants in violation of § 1981.[7] The individual Defendants seek dismissal of each of Plaintiff's claims. Defendants argue that Plaintiff has failed to allege that any of the individual Defendants "have prevented her from making or enforcing the Settlement Agreement from the EEOC mediation" (Doc. No. 8, p. 24). In response to the motion Plaintiff argues that Defendants have misinterpreted the Amended Complaint, specifically she asserts that her § 1981 race discrimination claim is premised on Defendants'

---

[7] 42 U.S.C. § 1981 provides in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens. . . ."

17

involvement in her termination, which she attributes to her race. Plaintiff is the master of her complaint, and the Court therefore adopts her interpretation. Because Defendant misinterpreted Plaintiff's argument, and because the Court will not craft arguments on Defendant's behalf, the motion to dismiss is denied with regard to Plaintiff's 42 U.S.C. § 1981/1983 claims.

For the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED in PART and DENIED in PART. Specifically, the motion is granted as to Plaintiff's 42 U.S.C. § 1983 claims, and as to her FMLA claim against Defendant Wadley and as to her tortious interference claims as to Defendants Arrington and Wadley. In all other respects the motion is denied.

IT IS SO ORDERED this 19th day of March 2021.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE